NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FERNANDO PEREZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　　Defendant. | Civil Action No. 17-1747 (SDW)<br><br>**OPINION**<br><br>November 26, 2018 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Fernando Perez's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Richard West's ("ALJ West") denial of his claim for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ West's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On July 19, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 5, 2013, due to diabetes, high blood pressure, loss of eyesight, and carpal tunnel. (Administrative Record [hereinafter Tr.] 11, 200.) His claim was denied initially on December 19, 2013, and again on reconsideration on February 19, 2014. (Tr. 11.) Plaintiff then filed a written request for a hearing on March 19, 2014. (*Id.*) On June 5, 2015, Plaintiff appeared and testified at an administrative hearing before ALJ West in Newark, New Jersey.[1] (*Id.*) Vocational Expert Jackie L. Wilson ("VE Wilson") also testified. (Tr. 30.) Subsequently, ALJ West concluded that Plaintiff was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act from the alleged onset date of July 5, 2013, through the date of ALJ West's decision dated August 18, 2015. (Tr. 11, 22.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty years old at the alleged onset of his disability in 2013. (Tr. 38, 166.) At the time of the administrative hearing, Plaintiff's most recent significant employment was as a heating, ventilation, and air conditioning ("HVAC") installer, and as an armed security guard. (Tr. 20, 38-43, 215-23.) In those positions, Plaintiff stood and walked for eight hours a day, and lifted and carried boxes that weighed 50 pounds or more. (*Id.*) Plaintiff has not performed paid work since July 5, 2012. (Tr. 200.)

---

[1] This Court notes that the transcript indicates the Hearing Site was in New York, but the ALJ's Decision indicates that the hearing took place in Newark, New Jersey. (Tr. 11, 30.)

### 2. Medical History

The record demonstrates that numerous medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with his disability claim. (Tr. 261-69, 277-78, 280-83, 288-350.) The following is a summary of the evidence.

Since 2002, Plaintiff has had a history of hypertension and diabetes mellitus type 2. (Tr. 261.) Plaintiff's hypertension has generally been uncontrolled through at least March 2015. (Tr. 14, 262, 281, 302, 310, 325, 327, 330.) His diabetes has been uncontrolled for much or all of the time since the alleged onset date of disability. (Tr. 13, 264, 281, 313, 327, 330, 333-35, 337-38.) Plaintiff also suffers from peripheral neuropathy as evidenced from a heavy proteinuria and elevated creatinine clearance rate. (Tr. 14, 272-73, 276, 281, 325, 338.) On October 22, 2013, Dr. Rahel Eyassu ("Dr. Eyassu") performed a consultative examination which revealed decreased sensation in the palmar surface of the fingers, the hand, and part of the forefoot, as well as a reduced grip strength. (Tr. 14, 261-69.)

Plaintiff also has a history of retinopathy, bilateral carpal tunnel syndrome, and obstructive sleep apnea. (Tr. 14, 262, 281, 305-06, 349-50.) A pulmonary function study performed on Plaintiff showed small airways obstructive defect and a moderate decrease in diffusing capacity, which significantly affects walking, lifting, carrying, pushing and pulling. (Tr. 14, 316-19.) Plaintiff was also diagnosed with obesity and hyperlipidemia. (Tr. 14, 281, 298, 302-03, 310, 312, 325, 327, 330, 335.)

### 3. Function Report

On July 30, 2013, a function report was written on Plaintiff's behalf in which he listed his daily activities, including taking care of his son, assisting his son with chores such as sweeping and washing the dishes, making microwavable dinners, and watching television. (Tr. 207-14.)

Plaintiff also reported that he had stopped driving[2] and was taking the following prescribed medications for his physical symptoms: amlodipine, Diovan HCT, metoprolol, glipizide, metformin, simvastatin, and tramadol.[3]  (Tr. 16, 203, 210.)

### 4. Hearing Testimony

ALJ West held a hearing on June 5, 2015, during which Plaintiff testified to the following: Plaintiff stopped working at his last job as an armed security guard because he had trouble grasping objects (Tr. 43); his hands were always numb and tingling which made it difficult for him to hold an object such as a water bottle for longer than two minutes before dropping it (Tr. 48-49); he had difficulty lifting a cup of coffee, picking up a small object like a dime, cutting meat, writing a letter without stopping, and typing (Tr. 49-52); the heaviest weight he could lift was ten pounds (Tr. 50-51); and reaching overhead was painful because of the tingling and numbness in his hands (*id.*). Plaintiff also stated that he experienced blurry vision on a daily basis, and could not read very well since letters appeared non-distinct to him.  (Tr. 58-59.)

Plaintiff acknowledged that in the past he had been noncompliant with taking his prescribed medications due to his own "foolishness" and was also noncompliant with maintaining his prescribed diet and using his CPAP machine for his sleep apnea.  (Tr. 44-47.)  Plaintiff further acknowledged that he had lost thirty-three (33) pounds since he became more compliant, and his blood pressure and blood sugars were mostly controlled at the time of the hearing.  (Tr. 44-45, 59.)

VE Wilson testified that there are jobs that exist in significant numbers in the national economy that could be performed by a hypothetical individual limited to sedentary exertional work with the following attributes: Plaintiff's age and experience; an inability to perform his past

---

[2] Plaintiff later testified that he had driven to the June 5, 2015 hearing in Newark.  (Tr. 210.)
[3] This court notes that the Function Report misspells the names of some of the medications.

relevant work; lack of transferable work experience; an inability to climb ladders, ropes, or scaffolds; the ability to perform other postural functions occasionally and frequently handle and finger; the inability to keyboard or type; the ability to occasionally read fine print; and the need to avoid unprotected heights and dangerous machinery. (Tr. 61-62.) The described hypothetical individual could perform the occupations of document preparer, final assembler, and table worker. (*Id.*) VE Wilson added that if the same hypothetical individual could only occasionally, as opposed to frequently, handle and finger, no jobs would be available in significant numbers in the national economy. (Tr. 62.) If the hypothetical individual could still frequently handle and finger, but could only perform the work described for a maximum of six hours a day in a normal eight-hour work day, that would preclude him from working on a full-time basis. (Tr. 62-63.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.*

(quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give deference to the ALJ's findings if it is supported by substantial evidence in the record. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).  "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological

abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p.[4] An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20

---

[4] On June 14, 2018, the Social Security Administration ("SSA") rescinded SSRs 96-3p and 96-4p because the rulings were considered "unnecessarily duplicative" of SSR 16-3p. Social Security Rulings (SSRs) 96-3p and 96-4p; Rescission of SSRS 96-3p and 96-4p, 83 Fed. Reg. 27816-01 (June 14, 2018). The rescissions do not substantively change the SSA's policies and do not affect this Court's analysis.

7

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC") using a two-step process. [5]  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  A claimant's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv),

---

[5] First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 16.)  Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*.)

8

416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

In his decision on August 18, 2015, ALJ West properly applied the five-step disability test before determining that Plaintiff was not disabled. (Tr. 11-22.) The ALJ's findings are supported by substantial credible evidence. There is no basis for remand or reversal because the ALJ appropriately considered all of Plaintiff's medically-supported complaints.

At step one of the five-step test, ALJ West determined that Plaintiff did not engage in substantial gainful activity between the alleged onset date of his disability through his date last insured. (Tr. 13.); *see* 20 C.F.R. §§ 404.1571 *et seq*, 416.971 *et seq*. At step two, the ALJ found that Plaintiff's diabetes mellitus, peripheral neuropathy, hypertension, retinopathy, carpal tunnel syndrome, respiratory impairment, pulmonary impairment, and obesity are severe impairments

9

because they significantly interfere with work-related activities and are well documented in the record.[6] (Tr. 13-14.); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, ALJ West found that Plaintiff does not have an impairment that meets the severity of one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.) Specifically, Plaintiff's impairments were compared with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 11.14, 2.02, 3.02, and 3.10.[7] (*Id.*) In considering § 11.14, the ALJ noted that Plaintiff is not unable to ambulate effectively, nor is he unable to perform fine and gross movements effectively, as defined in § 1.00B2b and § 1.00B2c. (*Id.*) In considering § 3.02, ALJ West noted that Plaintiff's pulmonary function analysis revealed acceptable and reproducible FEV1, FVC, and DLCO values that significantly exceeded the maximum values that would meet the corresponding respiratory listings. (Tr. 15, 316-19.) In addition, no arterial blood gas values have been provided, and there are no documented asthma "attacks" requiring the type of medical intervention described in § 3.00C. (Tr. 15.) In considering § 3.10, ALJ West noted that there is no evidence of cor pulmonale and no sign of impaired daytime cognitive function requiring medical intervention. (*Id.*)

In order to undergo the analysis in step four, ALJ West followed the proper two-step process to first determine Plaintiff's RFC. (Tr. 15.) At the first step, the ALJ made the following conclusions: Plaintiff's alleged peripheral neuropathy and carpal tunnel syndrome could reasonably be expected to cause some numbness and tingling in the upper extremities; Plaintiff's

---

[6] ALJ West also acknowledged that Plaintiff suffers from nephropathy and hyperlipidemia, but determined that these physical impairments do not limit his ability to perform work-related activities, or at least have not done so for the required duration. (Tr. 14.)
[7] Section 11.14 addresses peripheral neuropathies, § 2.02 addresses loss of central visual acuity, § 3.02 addresses chronic pulmonary insufficiency and asthma, and § 3.10 addresses sleep-related breathing disorders.

alleged diabetes mellitus, obesity, hypertension, and respiratory impairment could reasonably be expected to cause some shortness of breath with prolonged or rapid walking; Plaintiff's retinopathy could reasonably be expected to cause blurry vision, which prevents reading fine print more than occasionally and warrants avoiding any exposure to unprotected heights and dangerous machinery; and Plaintiff's diabetes mellitus, peripheral neuropathy in the legs, hypertension, respiratory impairment, and obesity could reasonably be expected to produce some disequilibrium and dizziness. (Tr. 16-18.)

At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his diabetes mellitus, peripheral neuropathy, carpal tunnel syndrome, hypertension, retinopathy, respiratory and pulmonary impairments, and obesity were not entirely credible.[8] (Tr. 16-18.) Notably, the ALJ pointed to a Function Report written on behalf of Plaintiff on July 30, 2013, which did not identify any impact Plaintiff's impairments had on the use of his hands. (Tr. 16, 211-12.) Plaintiff's medical records do not show any treatment of his upper extremities with neurosurgery, steroids, or analgesic medication. (Tr. 16.) Plaintiff also testified that he had driven himself to the hearing in Newark.[9] (Tr. 56.)

---

[8] Although SSR 16-3p eliminated the use of the term "credibility" from the SSA's sub-regulatory policy, SSR 16-3p only applies to determinations and decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *2, 13 n.27 (Oct. 25, 2017). The SSA explained, "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." *Id.* at *13 n.27. Because ALJ West's decision was issued on August 18, 2015, this Court need not analyze whether the ALJ's decision comports with SSR 16-3p.

[9] This Court notes that ALJ West considered Plaintiff's subjective complaints of feeling weak during the day because his blood sugar levels were sometimes low and noted that Plaintiff's prescribed medications for diabetes mellitus could potentially cause such symptoms. (Tr. 17.) However, the ALJ concluded that Plaintiff's statements were not credible enough to establish a persistent problem with low blood sugar. (Id.) The ALJ's determination was supported by the lack of blood test reports showing low glucose levels, and the lack of any historical accounts of low blood sugar by Plaintiff in the treatment records and reports. (Tr. 17, 272-73, 281, 323-36.)

The ALJ noted that the only gross focal neurological signs found by Plaintiff's neurologist, Dr. Steven M. Lomazow ("Dr. Lomazow"), were the positive Tinel's sign over the right carpal tunnel, subjectively diminished vibratory sense symmetrically in the hands more than the feet, and slightly decreased, symmetrical reflexes. (Tr. 16, 289.) Plaintiff's sensory loss did not extend to light touch, temperature, pinprick, or proprioception. (*Id.*) Additionally, Dr. Lomazow reported no weakness, and no evidence of any specific loss of bulk or tone. (*Id.*) Dr. Lomazow assessed that Plaintiff had probable early cervical osteoarthritic or spondylitic changes in combination with possible median neuropathy (i.e. carpal tunnel syndrome). (Tr. 16, 290.)

Even at the consultative examination on October 22, 2013, Dr. Eyassu opined that, despite the decreased sensation in the palmar surface of the fingers and hand, and despite mildly diffuse swelling and erythema of the right hand, Plaintiff's grip strength was only mildly reduced, at 4/5. (Tr. 16, 262.) Dr. Eyassu also opined that Plaintiff had no Tinel's sign and had full range of motion through the upper extremities. (*Id.*)

Moreover, ALJ West also found that the alleged degree of Plaintiff's shortness of breath was not supported by objective medical evidence. (Tr. 17.) A pulmonary function study performed by Dr. Vipin Garg ("Dr. Garg") on March 27, 2015, which yielded acceptable and reproducible spirometry data, showed only limited small airways obstructive defect and moderately decreased diffusing capacity. (Tr. 17, 316-20.) Plaintiff's lung values were also within normal limits, and his physical examinations did not reveal signs of chronic respiratory impairment. (Tr. 17, 262, 297, 302, 310, 316-20.)

ALJ West further considered Plaintiff's subjective complaints that he suffered from blurry vision, which made letters appear non-distinct and made it difficult for Plaintiff to read. (Tr. 18.) The ALJ noted that Plaintiff had scheduled surgery for his eyes and had recently been prescribed

new bifocal lenses to help with his reading. (Tr. 18, 58-59.) The ALJ determined that Plaintiff's retinopathy accounted for his blurry vision, and he accordingly limited Plaintiff's RFC to the ability to read fine print only occasionally. (Tr. 18.)

In considering Plaintiff's complaints of disequilibrium and dizziness, ALJ West determined that the objective medical findings associated with Plaintiff's diabetes mellitus, peripheral neuropathy in the legs, hypertension, respiratory impairment, and obesity would cause symptoms that would limit Plaintiff's RFC. (Tr. 18, 111, 228.)

Many of Plaintiff's subjective complaints are not supported by his medical records or the reports from Plaintiff's physicians. ALJ West gave significant weight to Dr. Eyassu's opinion that Plaintiff had limitations for moderate-to-marked exertion, and with sustained gripping and grasping. (Tr. 19, 263.) However, these limitations would not prevent Plaintiff from performing sedentary exertion, and would not prevent frequent gripping and grasping. (*Id.*) Dr. Eyassu's examination findings and blood test results support this opinion. (Tr. 19, 265-66.) The ALJ also gave weight to the opinions of the DDS medical consultants who participated in the adjudications at the initial and reconsideration levels. (Tr. 19, 65-74, 87-94.) The medical consultants at both levels determined that Plaintiff had the ability to sit for a total of six hours in an eight-hour workday, the inability to stand and/or walk for six hours or more in an eight-hour workday, and various postural limitations. (Tr. 19, 81, 91-92.)

Plaintiff was also non-compliant in various phases of his treatment. (Tr. 18, 44-47, 308, 327.) Plaintiff testified that he was not careful with his medications, diet, and weight management. (Tr. 44-46.) Dr. Garg and Dr. Ranka Samsa ("Dr. Samsa") documented Plaintiff's history of non-compliance in their examination notes. (Tr. 308, 327.) Dr. Garg noted that Plaintiff was "very non[-]compliant" with his medications, diet and CPAP machine as of March 17, 2015. (Tr. 308.)

13

Plaintiff's more recent diligence in taking care of his own health care needs demonstrates the immense impact Plaintiff's past non-compliant behavior had on his health. Plaintiff acknowledged at the hearing that his blood pressure was now controlled, that his blood sugars were greatly improved and nearing controlled levels, that he had lost 33 pounds, that he had been fitted with a mask that allowed him to properly use his CPAP machine, that he was sleeping better, and that he had begun using a nebulizer at home for his asthma. (Tr. 18, 44-47, 59.) Accordingly, the ALJ concluded that Plaintiff

> would not be expected to be able, on a regular and continuing basis, to lift and/or carry more than 10 pounds at a time, to lift or carry articles heavier than docket files, ledgers, and small tools even occasionally, to push and/or pull beyond what is shown for lifting/carrying, or to do more than occasional walking and/or standing. [Plaintiff] also would not be able to climb ladders, ropes or scaffolds, to perform other postural functions more than occasionally, or be exposed to unprotected heights and dangerous machinery without endangering himself or others.

(Tr. 18.) Thus, after carefully considering the evidence, ALJ West found that through the date last insured, Plaintiff had the RFC

> to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), except: He cannot climb ladders, ropes or scaffolds; he can perform the other postural functions occasionally; he can frequently handle and finger; he cannot no [sic] keyboard or type; he can only occasionally read fine print; and he must avoid unprotected heights and dangerous machinery.

(Tr. 15.) Given Plaintiff's RFC, the ALJ determined at step four that Plaintiff cannot perform his prior work as an HVAC installer or as an armed security guard. (Tr. 20.)

At step five, ALJ West considered the vocational expert's testimony in determining that Plaintiff can perform three jobs that exist in significant numbers in the national economy: document preparer, final assembler, and table worker. (Tr. 20-21, 60-63.) After properly following the five-step disability test, ALJ West determined that Plaintiff is not disabled under the

14

Act. As detailed above, there is substantial credible evidence in the record to support the ALJ's decision.

## IV. CONCLUSION

Because this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

                                                      s/ *Susan D. Wigenton*
                                                     **SUSAN D. WIGENTON**
                                                     **UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties